UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br>    Plaintiff,<br><br>    v.<br><br>LOUIS TARANTINO, III,<br>    Defendant,<br><br>    v.<br><br>JAMES DIMON,<br>    Intervenor. | No. 3:15-cv-62 (SRU) |

### RULING AND ORDER

This insurance coverage dispute arises out of a personal injury action filed by James M. Dimon against Louis Tarantino III in Milford Superior Court, Docket No. AAN-cv-14-6016923-S. Allstate Insurance Company ("Allstate") seeks a declaratory judgment that it does not owe a duty to defend or indemnify Tarantino under a homeowners' insurance policy issued to his parents. (doc. 1) On October 15, 2015, Allstate filed a motion for summary judgment. (doc. 20) Because Tarantino has failed to defend himself in this suit in any meaningful way, Dimon was granted permission to intervene, (doc. 27), and filed a cross-motion for summary judgment on February 29, 2016, (doc. 28). I held a hearing on the motions for summary judgment on May 16, 2016. (doc. 34)

For the following reasons, I **deny in part** Allstate's motion for summary judgment with respect to the duty to defend Tarantino, and **grant in part** Dimon's motion for summary judgment on that issue. I have determined that it is premature to rule on whether Allstate has a

duty to indemnify Tarantino, and accordingly, both motions are **denied without prejudice** with respect to whether Allstate has a duty to indemnify Tarantino.

I.      **Standard of Review**

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving

2

party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

## II.     Background

### A. Relevant Insurance Policy Provisions

Louis Tarantino, Jr. and Marylynne Tarantino carry a homeowners' insurance policy through Allstate in the amount of $500,000 (the "Policy"), which was in effect during all relevant periods. Pl.'s Br., Ex. A.

The Policy includes the following relevant definitions:

> "Insured person(s)" — means you and, if a resident of your household:
>
> (a) any relative; and
>
> (b) any dependent person in your care.

*Id.* at 19. The parties apparently agree that Louis Tarantino III ("Tarantino"), the adult son of Louis and Maylynne Tarantino, falls under the definition of an "insured person."

> "Occurrence" — means an accident including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage.

*Id.* at 20. The word "accident" is not defined.

Under Section II of the Policy, entitled "Family Liability and Guest Medical Protection," the Policy includes "Family Liability Protection" under Coverage X and "Guest Medical Protection" under Coverage Y. *Id.* at 38, 40. Both provisions appear to cover a claim for a suit for damages against an insured person caused by the activities of the insured person and both include substantially similar relevant language[1] as follows (from Coverage X):

> Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury . . . arising from an occurrence to which this policy applies, and is covered by this part of the policy.
>
> . . . .
>
> **Losses We Do Not Cover Under Coverage X**
>
> We do not cover any bodily injury . . . intended by, or which may reasonably be expected to result from the intentional or criminal

---

[1] I note two distinctions that do not appear to have relevance in the present case: first, Coverage X covers both bodily injury and property damage, whereas Coverage Y covers only bodily injury; and second, Coverage X provides coverage for damages that an insured person is "legally obligated" to pay arising out of an occurrence, whereas Coverage Y provides coverage for "reasonable expenses" arising out of an occurrence.

> acts or omissions of, an insured person. This exclusion applies even if:
>
> a) such bodily injury . . . is of a different kind or degree than that intended or reasonably expected; or
>
> b) such bodily injury . . . is sustained by a different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

*Id.* at 38; *see also id.* at 40.

### B. The State-Court Complaint

The following allegations are drawn from the state-court complaint Dimon filed in Milford Superior Court on September 2, 2014. *See* Pl.'s Br., Ex. B [hereinafter, "State Compl."]. On October 19, 2012, Dimon and Tarantino were at the house of their close friend Craig Zysk. *Id.* at ¶¶ 11, 12. At about 6:30 p.m., Dimon told Tarantino and Zysk that he was not feeling well and went to lie down on a couch in the basement. *Id.* at ¶ 13. At about 8:12 p.m., Tarantino picked up an air gun that another friend, Beau Bowden, had left at Zysk's house the previous day. *Id.* at ¶ 14. Tarantino aimed the gun at the floor and pulled the trigger several times. *Id.* at ¶ 15. Gas was released from the gun, but no pellets fired. *Id.* Tarantino then decided to go downstairs and "startle and/or waken" Dimon by pulling the trigger of the air gun, which would cause the release of gas and a firing sound. *Id.* at ¶ 16. At that point, Tarantino did not believe the air gun was loaded. *Id.* at ¶ 17.

Tarantino pulled the trigger several times in close proximity to Dimon, releasing gas. *Id.* at ¶ 18. One pull, however, released a pellet from the air gun, which struck Dimon in the left eye and caused significant injuries. *Id.* at ¶¶ 19, 21. The complaint does not specify whether the

pellet was discharged from the air gun's chamber, magazine, or pellet clip, and instead expressly leaves open each of those possibilities. *See id.* at ¶¶ 20(e)–(f).

On the basis of those allegations, Count One of the state-court complaint brings a claim against Tarantino sounding in negligence. *Id.* at ¶¶ 21–24. Allstate is currently providing a legal defense to Tarantino. *See* Pl.'s Br., Ex. C.

**III.   Discussion**

Allstate makes two arguments in support of its motion for summary judgment: (1) the complaint does not allege that Dimon's injuries were caused by an "occurrence" and (2) even if the complaint does adequately allege an occurrence, the "intentional or criminal acts" exception applies to bar coverage. Before reaching those arguments, however, I must consider how the basic principles of liability insurance law require me to approach the case at this stage of the proceedings.

   A.   <u>The Duty to Defend and the Duty to Indemnify</u>

"Under Connecticut law, it is well established that a liability insurer has a duty to defend its insured if the pleadings" against the insured "allege a covered occurrence." *Ryan v. Nat'l Union Fire Ins. Co.*, 692 F.3d 162, 167 (2d Cir. 2012) (quoting *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457 (2005) (alterations omitted)). "In determining whether a claim falls within the scope of an insurance policy, the Supreme Court of Connecticut 'construes broad policy language in favor of imposing a duty to defend on the insurer,' and 'requires a defense if an allegation of the complaint falls even possibly within the coverage.'" *Id.* (quoting *Hartford Cas. Ins. Co.*, 274 Conn. at 466 (2005) (alterations omitted)).

"[A]n insurer's duty to defend is measured solely by whether the complaints against the insured allege facts that, if proven true, would present a claim within the scope of the policy's

6

coverage. It is well settled that an insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint." *Coregis Ins. Co. v. American Health Found.*, 241 F.3d 123, 127 (2d Cir. 2001) (internal citations and quotation marks omitted) (quoting *Springdale Donuts, Inc. v. Aetna Cas. and Sur. Co.,* 247 Conn. 801, 807 (1999)). "[T]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured." *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 448 (D. Conn. 2010) (quoting *Hartford Cas. Ins. Co.*, 274 Conn. at 463)).

"In contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case." *Board of Educ. of City of Bridgeport v. St. Paul Fire and Marine Ins. Co.*, 261 Conn. 37, 48–49 (2002) (citing *Home Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 229 F.3d 56, 66 (1st Cir. 2000)). "The duty to indemnify arises only if the evidence adduced at trial establishes that the conduct *actually* was covered by the policy." *Cambridge Mutual Fire Ins. Co. v. Ketchum*, 2012 WL 3544885, at *6 (D. Conn. Aug. 16, 2012) (emphasis in the original).

"The duty to defend and the duty to indemnify are separable issues, and it is not required that they be decided at the same time." *Id.* "Indeed the Connecticut Supreme Court has held that granting a declaratory judgment on the issue of indemnification is improper when the underlying action is still pending and the duty to defend the insured has arisen." *Id.* at *7.

Those principles guide this Ruling and Order in the following ways: first, "[b]ecause the duty to indemnify in the present case depends on the factual basis upon which judgment, if any, is rendered against [Tarantino] in the underlying state court case[], a ruling on the duty to

indemnify is premature at this time." *State Farm Mut. Auto. Ins. Co. v. Simonelli*, 2014 WL 3738091, at *8 (D. Conn. July 28, 2014). Accordingly, my ruling on whether Allstate has a duty to indemnify Tarantino will be reserved, and the remainder of this Ruling and Order will consider only the duty to defend.

Second, with respect to the duty to defend, I note that although Dimon has provided additional materials, Allstate correctly points out that my inquiry should be limited to a consideration of the allegations of the complaint and terms of the insurance policy. *See Cmty. Action for Greater Middlesex Cty., Inc. v. Am. All. Ins. Co.*, 254 Conn. 387, 395 (2000); *Moore v. Cont'l Cas. Co.*, 252 Conn. 405, 409 (2000); *see also Allstate Ins. Co. v. Jussaume*, 35 F. Supp. 3d 231, 238 (D. Conn. 2014) ("[I]n presenting countervailing proof, . . . the insured[ ] is necessarily limited to the provisions of the subject insurance policy and the allegations of the underlying complaint.") (quoting *Lancia v. State Nat. Ins. Co.,* 134 Conn. App. 682, 691 (2012), *cert. denied*, 305 Conn. 904 (2012)). Accordingly, I do not consider any evidence beyond the state-court complaint and the Policy at this time.

B. Does the Complaint allege an "Occurrence"?

Allstate argues that Dimon's injuries do not arise from an occurrence because they were the direct and foreseeable consequence of an intended mechanical act (namely, Tarantino pulling the trigger), regardless of whether Tarantino acted with a subjective intent to cause physical harm.

As set out above, the Policy provides coverage only for bodily injury "arising from an occurrence." An occurrence, in turn, is defined as an accident, and the term accident is not defined. What appears to be the most commonly cited Connecticut Supreme Court case on the issue has defined an "accident" as:

8

> "[a]n *unintended* and unforeseen injurious occurrence"; (emphasis added) Black's Law Dictionary (7th Ed.1999); "an occurrence *for which no one is responsible* "; (emphasis added) *Messina v. New Haven*, 119 Conn. 166, 168, 174 A. 188 (1934); and "an event of unfortunate character that takes place *without one's foresight or expectation.*" (Emphasis added; internal quotation marks omitted.)[.] *Metropolitan Life Ins. Co. v. Aetna Casualty & Surety Co.,* 255 Conn. 295, 307, 765 A.2d 891 (2001), quoting *Arthur A. Johnson Corp. v. Indemnity Ins. Co. of North America,* 7 N.Y.2d 222, 228, 164 N.E.2d 704, 196 N.Y.S.2d 678 (1959).

*Allstate Ins. Co. v. Barron*, 269 Conn. 394, 409 n.10 (2004); see also *Commercial Contractors Corp. v. Am. Ins. Co.*, 152 Conn. 31, 42 (1964) (defining accident as "an unexpected happening"); *Providence Washington Ins. Grp. v. Albarello*, 784 F. Supp. 950, 953 (D. Conn. 1992) ("An 'accident,' in the words of one eminent authority, is a 'sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result.'") (quoting Webster's Third New International Dictionary of the English Language (Merriam, 1976) at 11). Under Connecticut law, the relevant inquiry in determining whether an occurrence constitutes an accident is "whether the event causing the injury was an accident, not whether the injury itself is accidental." *Allstate Ins. Co. v. Smudin*, 2009 WL 890912, at *5 (D. Conn. Mar. 31, 2009).

The parties here disagree about the extent to which a conscious *mechanical* act of an actor renders the results "intentional"—that is to say, non-accidental—and whether the insured person's subjective beliefs and other circumstances can factor into the analysis. As the Michigan Supreme Court suggested in a factually similar case, where to draw that line is a question of policy, rather than a clear application of rules:

> Actions have consequences, and with sufficient effort, a connection between an occurrence and a prior action on the part of the insured can invariably be identified. However, merely because, in retrospect, an insurer is able to identify such a connection, does not mean that what took place was not an "accident." If one is driving too fast on a highway, not intending to but nonetheless causing an accident, it can hardly be denied that what has resulted is an accident despite the fact that it might be

9

>traceable to "objectively unreasonable" conduct by the insured, i.e. driving too fast on a highway.

*Allstate Ins. Co. v. McCarn*, 466 Mich. 277, 289 (2002) ("*McCarn I*").

Chief Judge Janet C. Hall, in *State Farm Mutual Automobile Insurance Company v. Simonelli*, 2014 WL 3738091 (D. Conn. July 28, 2014), points out that, as in the present case, the insurance company's argument that the conduct is not an occurrence "hinge[s] on a claim that [the insured person]'s actions were intentional rather than reckless or negligent." *Id.* at *4; *see also id.* ("The Connecticut common law definition of 'accident' focuses on lack of intent.") (quoting *Allstate Ins. Co. v. Wilson,* 2014 WL 1762055, at *3 (D. Conn. April 30, 2014)). She observes that a finding of intentionality (and therefore a non-"accident") requires two elements: "(1) the insured must have intended to commit the act and (2) to commit the injury that resulted." *Id.* at *5 (quotation marks and citations omitted). The first element captures the volition of the insured person engaging in the mechanical acts, whereas the second element captures the subjective and objective question of foreseeability, as follows:

>The second element—intent to cause the injury that resulted—may be inferred at law in circumstances where the alleged behavior in the underlying action is so inherently harmful that the resulting damage is unarguably foreseeable. Our courts apply this legal inference to limited circumstances where the nature of the defendant's acts inherently included the desire to cause the harm that resulted.

*Id.* (quotation marks and citation omitted); *see also Blue Ridge Ins. Co. v. Honegan*, 2001 WL 1707091, at *2 (Conn. Super. Ct. Dec. 21, 2001) ("Intent, on the other hand, involves '*a state of mind* . . . about *consequences* of an act (or omission) and not about the act itself . . . [that] extends not only to having in the mind a purpose (or desire) to bring about given consequences but also to having in mind a belief (or knowledge) that given consequences are substantially certain to result from the act.'") (emphasis in original; citation omitted); *Allstate Ins. Co. v. Wilson*, 18 F. Supp. 3d 156, 161 (D. Conn. 2014) ("[T]he court examines the alleged activities in

the complaint to determine whether the insured intended to commit both the acts and the injuries that resulted. *If it appears both were intended*, then coverage will be denied regardless of how the insured's conduct is characterized in the pleadings.") (emphasis added; quotation marks and citation omitted).

Consistent with the approach described in *Simonelli*, both federal and state court judges have found "occurrences" in circumstances with a highly foreseeable risk of the resulting harm, where the complaint failed to adequately allege the intent of the insured person *to cause harm*. For instance, in *Allstate v. Berube*, 84 Conn. App. 464 (2004), the court found an "occurrence" where an insured person secretly brought a loaded, sawed-off shot gun into bed with his wife and infant daughter that went off when his wife rolled over it, shooting her in the back of the head. *Id.* at 470. The court reasoned that the shooting was an accident because the insured person did not actually pull the trigger. *Id.* But although the facts are reversed in this case (*i.e.*, Tarantino *did* pull the trigger, thinking the gun was unloaded), a bodily injury would appear to have been *less* foreseeable in the present case than in *Berube*. Similarly, in *Simonelli*, Judge Hall found an "occurrence" where the insured person voluntarily drove under the influence of PCP, stating that such conduct "certainly constitutes a flagrant disregard for the safety of others. However, without additional facts, it does not of itself denote an *intention* to harm others." 2014 WL 3738091, at *6; *see also Allstate Ins. Co. v. Neleber*, 2015 WL 5442828, at *5 (D. Conn. Sept. 15, 2015) (finding an occurrence where an insured person caused injury when he "swung his arms when he was inattentive to the presence of individuals around him").

Taking the subjective intentions of the insured person into account when determining whether an incident is an "occurrence" is also the most logical way to reconcile the provisions in the Policy. After stating that the Policy will cover bodily injury "arising from an occurrence"

11

subject to certain exceptions, both Coverage provisions exclude bodily injury "intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person." The "reasonably expected" language is clearly intended to encompass foreseeable injuries. Thus, it must be possible for the coverage of injury arising from "occurrences" to include bodily injury foreseeably arising from some intentional or criminal acts in an accidental way, or there would be no need to exclude coverage for such situations. Conversely, finding an "occurrence" only in the absence of a volitional act, as Allstate seems to suggest, would render the Policy virtually useless, allowing coverage only for "occurrences that were truly unexplainable." *McCarn I*, 466 Mich. at 289.

Finally, the *Simonelli* approach is consistent with Connecticut's policy of having a broader duty to defend than to indemnify. *See, e.g.*, *Ryan v. Nat'l Union Fire Ins. Co. of Pittsburgh PA*, 692 F.3d 162, 167 (2d Cir. 2012) (finding a duty to defend "'[i]f an allegation of the complaint falls even *possibly* within the coverage.'") (quoting *Hartford Cas. Ins. Co.*, 274 Conn. at 463). The duty to defend under this Policy is triggered by allegations that there was an accident (*i.e.*, occurrence) during the policy period, but if the state court later finds liability based on an *intent* to harm, then the duty to indemnify will not apply. And the countervailing policy consideration of a potential for collusion between the insured person and the state-court plaintiff, as suggested in *Providence Washington Ins. Grp. v. Albarello*, 784 F. Supp. 950, 954–55 (D. Conn. 1992), boils down to a risk of perjury that is unfortunately present in every case and seems no more likely in this context than in any other.

Applying those principles here, the state-court complaint clearly alleges Tarantino did intend to engage in the mechanical acts leading up to the shooting, thereby meeting the first prong of the *Simonelli* test: it states that Tarantino "pulled the trigger [of the air gun] a number of

times while in close proximity to where [Dimon] was laying [sic] on the couch at the premises so it would make a loud firing noise and startle [Dimon]." State Compl. at ¶ 18; *see also id.* at ¶ 20(a) ("[Tarantino] pointed the Crosman AirGun model number 1077 in the direction of where the Plaintiff, JAMES M. DIMON, was laying on the couch and pulled the trigger."); *Blue Ridge Ins. Co.*, 2001 WL 1707091, at *3 (observing that pulling the trigger of a gun is an intentional act).

Both parties agree there is no allegation that Tarantino subjectively intended to shoot Dimon, or otherwise cause him any physical harm, although, as discussed further below, Allstate suggests that Tarantino did either intend or expect to cause *mental* harm by scaring Dimon. Instead, the complaint alleges that Tarantino did not subjectively believe there were any pellets in the air gun, State Compl. at ¶ 17, and more importantly, it alleges that he made an effort to confirm that belief by firing the air gun multiple times at the floor and determining that no pellets were released, *id.* at ¶ 15. Tarantino may have had more effective ways of ensuring that the air gun was unloaded; however, as the Michigan Supreme Court observed in *McCarn I*, where a teenager shot and killed his friend with what he believed was an unloaded gun, carelessness and poor judgment should not exclude negligent conduct from coverage:

> While it may be considered quite obvious that [the insured person's] conduct was careless and foolish, it was negligence that simply did not rise to the level that he should have *expected* to result in harm. Otherwise, liability insurance coverage for negligence would seem to become illusory. We must be careful not to take the expectation of harm test so far that we eviscerate the ability of parties to insure against their own negligence . . . .

466 Mich. at 287–88. Allstate attempts to manufacture an intent to cause harm by arguing that the resulting injuries were a foreseeable outcome; however, for the reasons discussed above, the Policy itself indicates that the foreseeability inquiry should be addressed with respect to whether

the "intentional or criminal acts" exception should apply, rather than whether the incident in question was an occurrence at all.

In the alternative, Allstate argues that the complaint's allegation that Tarantino intended to "startle and/or wake" Dimon, State Compl. at ¶ 16, is sufficient to show that he intended to cause Tarantino mental harm. It then argues that intent should be transferred to the harm that actually occurred, rendering it non-accidental. In support of that reasoning, Allstate relies on *Blue Ridge Ins. Co. v. Honegan*, 2001 WL 1707091 (Conn. Super. Ct. Dec. 21, 2001). *See* Pl.'s Reply Br. at 8. In *Blue Ridge*, the court considered whether an insured person who fired his gun in the air to scare the state-court plaintiff off of his property, which actions resulted in mental harm to the state-court plaintiff, could be covered by an insurance policy with a similar "occurrence" requirement. But Allstate's suggestion that the case is analogous because, like in the present case, the insured person shot a gun with the intent to scare the state-court plaintiff is not persuasive. The main question in *Blue Ridge* was whether the insured person had intentionally fired the weapon because he argued that it was essentially an instinctual, non-volitional act. *See Blue Ridge Ins. Co.*, 2001 WL 1707091 at \*3; *see also Blue Ridge Ins. Co. v. Honegan*, 2000 WL 1227307, at \*6 (Conn. Super. Ct. Aug. 14, 2000) (in a previous ruling, holding that the insured person had created a "genuine issue of material fact" by stating in a deposition that "he did not intentionally fire the gun, that it was a reaction, an 'accident'"). And once the court had determined that shooting the gun was an intentional mechanical act, it could easily find that the injury that actually resulted—namely, severe emotional distress—was both substantially certain to occur and different only in degree from the insured person's desired result of scaring the victim off of his property. *See Blue Ridge Ins. Co.*, 2001 WL 1707091 at \*4.

By contrast, in the present case, the allegations that Tarantino intended to "startle and/or wake" Dimon are barely sufficient to make out an intent to cause Dimon emotional harm. Moreover, the Connecticut Supreme Court has held that the term "bodily injury" does not encompass emotional harm unaccompanied by physical symptoms. *See Moore v. Cont'l Cas. Co.*, 252 Conn. 405, 411–12 (2000); *cf. Gen. Star Indem. Co. v. Millington*, 2006 WL 1680985, at *5–6 (Conn. Super. Ct. May 31, 2006) (distinguishing *Moore* on the grounds that the emotional distress in *Millington* both arose from witnessing the bodily injury of another and resulted in physical symptoms). Accordingly, Allstate's transferred intent theory would require me to rely on a series of extremely speculative assumptions—first, that Tarantino's attempt to "startle and/or wake" Dimon is sufficient to show an intent to cause emotional injury, and second, that the intended emotional injury would also have been accompanied by physical symptoms sufficient to constitute "bodily injury" under the Policy. Although also not squarely analogous, the reasoning of *American Insurance Company v. Saulnier*, 242 F. Supp. 257 (D. Conn. 1965), is suggestive. In *Saulnier*, the court rejected the insurance company's argument for no coverage where the insured person—a thirteen-year old boy—had thrown a bottle into a pool with the intent to scare a girl, but had instead hit and injured another boy in the water. *Id.* at 261. The court observed that in order to reach the conclusion that injuring the boy had been intentional, it would have to engage in several legal fictions:

> First, [the insured person's] intent to frighten the girl would have to be transformed to an intent to cause bodily injury to her. Then, the intent to injure her would have to be 'transferred' to an intent to injure [the state-court plaintiff]. There is no justification either in contract law or in public policy for importing fictions into insurance policies.

*Id.* The *Saulnier* court's skeptical attitude toward legal fictions seems equally appropriate in the present case, where I would have to transform Tarantino's intent to scare Dimon into an intent to

15

cause him bodily harm with what he believed to be an unloaded air gun, apparently on the off-chance that a pellet would still be lodged in the mechanism.

In sum, I hold that, for the purpose of the duty to defend, the incident at issue was an "occurrence" that could be covered under the Policy absent any exclusions.

C. Does the Intentional / Criminal Act Exclusion Apply?

Allstate argues that if the incident is an "occurrence," the Policy's exclusion for "any bodily injury . . . intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person" nevertheless applies to bar coverage. Because Allstate seeks the application of an exclusion clause to deny coverage, it has "the burden of demonstrating that the allegations of the underlying complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation." *Simonelli*, 2014 WL 3738091, at *3 (quotation marks and citation omitted).

As discussed above, the complaint does not allege that Dimon's bodily injury was "intended by" Tarantino. I thus consider whether the harm that resulted was "reasonably expected" to do so. First, the parties disagree over whether the "reasonably expected" language sets up a subjective or objective test—that is, whether the harm must have been "reasonably expected to result" by Tarantino himself, or by a reasonable person in those circumstance. That disagreement is not made explicit, but rather can be inferred from Dimon's reliance on the analysis in the plurality *McCarn II* opinion, which controversially filters the objective test through the subjective beliefs of the insured person by asking what a reasonable person *with those beliefs* would reasonably expect to occur. *See* Intervenor's Opp'n Br. at 12 (quoting *Allstate Ins. Co. v. McCarn*, 471 Mich. 283, 291 (2004) ("*McCarn II*")).

A plain reading of the exclusion, however, suggests that a purely objective test is appropriate here. The word "reasonable" is generally understood as a signifier of the objective test. Moreover, the language of the exclusion takes the insured person's subjective beliefs into account separately with its "intended by" clause. The placement of the word "by" before the "reasonably expected" clause, appears to be a further effort to distinguish the subjective beliefs of the insured from the objectively foreseeable results of his conduct—to effectuate *McCarn II's* blended test, the sentence could read "intended or reasonably expected to result *by the insured*," but it does not.

Previous rulings within and outside of this district, examining substantially similar policy language that harm be "reasonably expected to result," favor imposing an objective standard. For instance, in *Allstate Ins. Co. v. Linarte*, 2007 WL 1677444 (Conn. Super. Ct. May 24, 2007), the court considered two exclusions, one of which is identical to the one at issue in this case. The *Linarte* court approvingly relied on the reasoning of *Allstate Ins. Co. v. Simansky*, 45 Conn. Supp. 623 (Conn. Super. Ct. 1998), which observed that:

> "While the condition 'or . . . which are in fact intended' requires the subjective or conscious desire of the insured to inflict harm, the condition 'which may reasonably be expected' does not. To so require a subjective intent for this condition would render this clause 'wholly redundant.'"

*Id.* at *9 (quoting *Simansky*, 45 Conn. Supp. at 625); *see also Tripp v. Allstate Ins. Co.*, 262 Ga. App. 93, 95 (2003); *Nationwide Mut. Fire Ins. Co. v. James*, 2011 WL 382221, at *6 (E.D. Ky. Feb. 3, 2011) (collecting similar cases).

On the present record, applying the objective standard, a jury could find that a reasonable person would not have expected bodily injury to result from a gun that had been shot empty of its pellets. The reasonable person is likely generally aware, from cases like this one, that guns and related weapons believed to be unloaded may have a rogue projectile in the mechanism or

17

magazine, and accordingly that pointing any kind of projectile-shooting object at someone's face always poses some kind of risk. But although shooting blanks at the floor may not be the smartest or most effective means of reducing that risk, every blank shot fired reduced the foreseeability that the next pull would release a pellet.

Thus, because Allstate has not shown that Dimon's injury, as alleged in the complaint, falls "solely and entirely" within the policy exclusion, its motion for summary judgment is **denied** with respect to its duty to defend.

### IV.     Conclusion

I **deny in part** Allstate's motion for summary judgment with respect to the duty to defend Tarantino (doc. 20), and **grant in part** Dimon's cross-motion for summary judgment (doc. 28) on the same issue. I have determined that it is premature to rule on whether Allstate has a duty to indemnify Tartantino, and accordingly, both motions are **denied in part without prejudice** with respect to whether Allstate has a duty to indemnify Tarantino. Because the remaining issue turns on the outcome of the state-court action, the Clerk is directed to administratively close this case, without prejudice to reopening by any party following the resolution of the state-court action.

So ordered.

Dated at Bridgeport, Connecticut, this 23rd day of June 2016.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge